## Stewart *against* Moody.

If there be neglect of precision in the language of a recognizance, given by an administrator upon an order to sell real estate ; in an action upon it against the surety, the court will give it such construction, if the words will bear it, as is consistent with the requisitions of the law and the design of the parties.

In an action upon a recognizance, the breach of which is informally assigned, if the party go to trial upon the plea of payment, he cannot take advantage of such informality.

If an action be brought against a surety in a recognizance given by an administrator, conditioned for the faithful discharge of his duty in accounting for the proceeds of sale of real estate, it will not be defeated by the defendant's procuring the administrator to resign, and new letters to issue to another, who charged himself in his account with the proceeds of the sale of the land sold by his predecessor.

In order to the maintenance of an action against a surety, in a recognizance conditioned for the appropriation of the proceeds of the sale of real estate by an administrator, it is not necessary that the administrator himself should have been first sued.

ERROR to the common pleas of *Dauphin* county.

This was an action of debt, founded on a recognizance, in which the Commonwealth for the use of John Stewart and wife was plaintiff; and Joseph Moody, co-recognizor, with John Wallace and James Porter, were defendants.

The plaintiff's wife was a creditor of J. W. Simonton, on a recognizance given by the latter as surety for John M'Cord, her guardian, who had not paid over to her the sum of 492 dollars 47 cents, settled by a decree of the orphan's court on the 2d of June 1827. The defendant was surety in a recognizance dated the 5th of December 1826, for John Wallace, who was administrator of J. W. Simonton, and had petitioned the orphan's court for an order of sale of the real estate of J. W. Simonton, for payment of his debts and support of his minor children. The order was to sell on the 6th of January 1827, the purchaser to pay one half cash, the residue in three equal yearly payments, the first payment on the 1st of April 1828. On the 30th of January 1827, Wallace returned, Sold, according to the condition of the said order, for 1200 dollars to John Wiggins; and the sale was confirmed. It afterwards appeared that he took four bonds for the purchase money. The recognizance of Wallace and Moody was conditioned, that said administrator should faithfully execute the power of sale committed to him in making sale of the real estate of said deceased, and truly account for and pay the proceeds thereof as the court shall legally direct. The present suit was brought to August term 1833 : the *narr.* was filed in July 1833. On the 20th of August 1833, the defendant, Moody, petitioned the

IV.—W

orphan's court to vacate the letters of administration to Wallace, and grant new letters to some other person ; alleging, in his petition, that Wallace had mismanaged the estate so as to have left it unsettled ; that he never rendered any account to the orphan's court of the proceeds of said sale ; and that he had been informed and believed he had removed from the state more than three years since.   A citation issued, and on the 27th of November 1833, the court dismissed John Wallace as administrator, and directed letters to issue to James Simonton.   On the 4th of February 1834, they directed John Wallace to deliver over and pay to his successor James Simonton, all and every the goods, chattels, estates, effects and securities whatsoever in his hands of the said decedent.   On the same day James Simonton filed his account, in which he charged himself with the whole proceeds of the sale of the land, viz. the four bonds taken by Wallace for the purchase money.

The court below charged the jury that the only breach alleged, was, that J. Wallace did not pay the proceeds of the sale of the land as the orphan's court would have directed : that no decree of the orphan's court was alleged or proved, and therefore the plaintiff could not recover.   They also charged that the dismissal of the administrator, and his paying over all the proceeds of sale agreeably to the order of the 4th of February 1833, exonerated the defendant from liability.

*M'Clure* and *Harris*, for plaintiffs in error, contended, that the court erred in admitting evidence of a proceeding in the orphan's court by the present defendant, by which the administrator was discharged from his trust, and a decree that he should pay over the assets to his successor : it was after suit brought, and if the plaintiff's action could be thus defeated, every successive action which he might bring against each successive administrator might be defeated by the same doctrine ; and thus the plaintiff, having an admitted right of action, might exercise it without effect.   The defendant having gone to trial on the plea of payment, cannot now avail himself of an informality in the assignment of breaches.

*M'Kinney* and *M'Cormick*, contra, contended, that upon the discharge of an administrator, a rightful appropriation of the assets in his hands was to pay them over to his successor, which in this case, was done.   But this action cannot be maintained, because the plaintiff has never established his claim by an action against the administrator.   Commonwealth *v.* Evans, 1 *Watts* 437 ; Taggart *v.* Cooper, 1 *Serg. & Rawle* 503 ; Commonwealth *v.* Bryan, 8 *Serg. & Rawle* 133.   If, therefore, the plaintiff cannot recover, this court will not reverse the judgment.

The opinion of the Court was delivered by

SERGEANT, J.—The breach assigned in the declaration is in the words of the recognizance.   The condition of the recognizance is,

[Stewart v. Moody.]

that the administrator shall truly account for, and pay over the proceeds of sale as the court shall legally decree. The breach alleged is, not having truly accounted for and paid over the proceeds of such sale as the court would legally decree, and that the defendant had not paid to the commonwealth, for the use aforesaid, the money arising from such sale : and that plaintiff had not as yet obtained payment of said decree, which was legally payable out of the proceeds of said sale, whereby an action has accrued, &c. The breach is imperfectly assigned, it is true, but the defendant went to trial on the plea of payment, and thereby waived objections to form. The court, however, in saying that the only breach assigned was, that J. Wallace did not pay the proceeds of sale of the land as the orphan's court would have directed, seem to have fallen into a misconstruction of the breach. The substance of the recognizance is to account for the proceeds of sale, and also to pay them over as the court should legally decree. This latter branch could only refer to any surplus that might remain for distribution after payment of debts, &c., for in that only could the court make a decree. If the meaning of it was that the administrator was not bound to pay a creditor without a decree, he would be without remedy, for the orphan's court do not ordinarily decree payment of a debt by the administrator. There is certainly a great and censurable neglect of precision in the language of this recognizance, too prevalent in the proceedings of our orphan's courts. But such construction must be given to it, if the words will bear it, as is consistent with the requisitions of the law and the design of the parties. The breach, then, however informal, is, substantially, in the administrator's not accounting for the proceeds of sale, and not paying the plaintiff's debt.

The next branch of the charge raises the question, whether the defendant, by procuring the dismissal of the administrator and the appointment of another, and the surrender to that other of all the proceeds of sale of the land, after this action brought, thereby defeats the plaintiff's action. It cannot be denied that the plaintiff had a good cause of action at the time the suit was instituted. The defendant's recognizance was forfeited by the administrator's neglect to account for the proceeds of sale for more than six years, during all which time the estate was left unsettled, and for more than three years he had removed from the state, as appears by the defendant's own petition. It was the duty of the defendant to have procured a settlement of the account, and the payment of the plaintiff's debt by the administrator, agreeably to the terms of the recognizance. If the defendant could discharge the responsibility which had attached, by procuring the dismissal of his principal, I see no end to the proceeding, nor how a plaintiff can escape from being constantly baffled in enforcing his rights. The new administrator also gives sureties : these, on being sued for neglect of the new administrator, should the plaintiff be now turned over to him, may resort to the same expedient, and this may be done on every new occasion. The plaintiff would

[Stewart v. Moody.]

thus be deprived of his right of action, and thrown into the costs of suit at the will and pleasure of the defendant. Perhaps the course the defendant pursued may not have been the best for him. It would have been wiser to have procured the administrator to do his duty, or else to have obtained from him the funds for the purpose of indemnity, and paid the plaintiff. It would seem the surety had the power to procure the administrator immediately to conform to the course he adopted. It may generally be presumed that a surety has sufficient influence to induce his principal to secure him, and the law gives him peculiar means for his indemnity. But be the result what it may, it was the defendant's own act, and he must abide by it. The act of assembly gives a surety a right to procure the dismissal of the administrator, but it is for his own protection and for the security of the creditors, not for the purpose of defeating them. The surety cannot thus by his own act, after suit brought, destroy a clear right of action vested in the plaintiff, by the breach of the recognizance. To sanction such a principle would tempt him to neglect his duty to the last moment, and then, when pressed by a creditor, release himself from his obligations. The act of assembly confers no such right; and it would be dangerous to permit it.

An objection to the plaintiff's right of action has been made in the argument here, which it is proper to notice. It is, that a recovery should first have been had against the administrator, in analogy to the decision in Commonwealth v. Evans, 1 *Watts* 437; that the non-payment of a debt by an administrator is not such a breach of the condition of his administration bond as will enable the creditor to sue it, and recover his debt, without a previous suit fixing the administrator with a *devastavit*. The cases, however, are not analogous. The condition of the administration bond is, that the administrator will well and truly administer according to law, the goods, &c. of the deceased, which shall come to his hands. On this bond the surety is only liable for a *devastavit*, and there can be no legal evidence of a *devastavit* without a proceeding against the administrator making him responsible *de bonis propriis*. The liability of the surety, therefore, is contingent. In addition to which, there is the express provision of the second section of the act of the 4th of April 1797, directing in respect to the sureties in administration bonds there referred to, that there shall first be a return of *nulla bona* to an execution against the administrator, and notice thereof to the sureties that they may show goods and chattels, lands or tenements, in some other county, which may be taken in execution by a *testatum fieri facias*. See Commonwealth v. Evans, 1 *Watts* 437; Commonwealth v. Bryan, 8 *Serg. & Rawle* 133. But the administrator here proceeds under a special power given by act of assembly : he avers the existence of the debts; obtains an order to sell, and thereby receives funds to pay them ; and the condition of the recognizance is, that he account for these funds. The recognizance is forfeited by

his neglecting to account for them. This objection, therefore, is not sustainable.

This disposes of the first, second and fifth errors assigned. The other errors do not appear to be sustained, so far as we can judge of them at present.

Judgment reversed, and a *venire facias de novo* awarded.